UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HAKAN YALINCAK, Plaintiff, | |
| v. | Case No. 1:08-CV-00057-S-JH |
| CORNELL COMPANIES, INC., ET AL., Defendant. | MARCH 24, 2008 |

**OBJECTION PURSUANT TO F.R.C.P. 72(A) TO ORDER DENYING PLAINTIFF'S MOTION FOR CLARIFICATION**

The Plaintiff, Hakan Yalincak (hereinafter "Plaintiff" or "Yalincak"), in the above-entitled matters, pursuant to Fed.R.Civ.P. 72(a), files his Objections to the Court, Hagopian, M.J., Memorandum And Order (Doc. 7) dated March 18, 2008 denying the Plaintiff's Motion for Clarification, or, In the Alternative, Motion for Articulation of Court's Order Denying Motion for Appointment of Counsel dated March 10, 2008 (Doc. 6).

The Plaintiff states the magistrate judge's order was clearly erroneous or contrary to law and as discussed below the Plaintiff's Objections should be sustained.

## I. Background

The Plaintiff commenced this instant action on February 20, 2008 by filing his Complaint (Doc. 1), Motion to Proceed In Forma Pauperis (Doc. 3), and Motion to Appoint Counsel (Doc. 2).

On February 27, 2008, the Court, Hagopian, M.J., **granted** the Plaintiff's Motion for Leave to Proceed In Forma Pauperis (Doc. 4). On the same day, the Plaintiff's Motion to Appoint Counsel was **denied**. The Court, Hagopian, M.J., ruling on the

Plaintiff's Motion to Appoint Counsel was terse (Doc. 5).

Subsequently, the Plaintiff timely filed a Motion for Clarification (hereinafter "Motion for Clarification"), of the Court's decision, simply clarifying whether it was with or without prejudice.

However, the Court, Hagopian, M.J., erroneously concluded that the Motion for Clarification was a motion for reconsideration, and denied the said motion on March 20, 2008 (Doc. 7)(hereinafter, "March 20 Order").

## II. Objections

### A. Objection 1

The Court, Hagopian, M.J., in its March 20 Order concluded that "[p]laintiff essentially seeks this Court to reconsider its prior ruling. [s]aid motion is DENIED. [plaintiff is not entitled to the appointment of counsel in this civil proceeeding." Id.

The Plaintiff submits the Court's conclusion that the Motion for Clarification requested a "reconsideration" was clearly erroneous. Specifically, in the said Motion for Clarification, the Plaintiff **explicitly stated**, in pertinent part, as follows:

> "Therefore, the Plaintiff respectfully requests this Court clarify or in the alternative articulate as to whether the Court's ruling Doc. 4 [February 27, 2008 Order, Doc. 5, Denying Motion for Appointment of Counsel], **is with or without prejudice at a later date. Also, to be clear, the Plaintiff, is not in this filing, asking for a reconsideration of the Court's decision but simply clarification**."
>
> Motion for Clarification at p.2

Accordingly, given the clearly contrary languge of the relief requested in the Plaintiff's Motion for Clarification,

which explicitly states that it is not a request for reconsideration, the Court, Smith, J., should sustain the Plaintiff's Objection.

**B. Objection No. 2**

1. Procedural Background

It is unclear to the Plaintiff whether the Court, Hagopian, M.J., has completely foreclosed the possibility of Court appointed counsel. To the extent the Court, Hagopian, M.J., denied the Plaintiff's Motion for Appointment of Counsel with prejudice to renewal, the Plaintiff objects.

The Court, Hagopian, M.J., in its February 27 Order cited two reasons for denying the Plaintiff's motion:

First, there is no absolute constitutional right to a free lawyer in a civil case. See DeRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).

Second, the Court conclused the Plaintiff is able to adequately explain himself. However, there was no further analysis of the Plaintiff's Situation.

2. Applicable Standard For Appointment of Counsel

The First Circuit has explained that the denial of a request for appointed counsel is reviewed under an "abuse of discretion standard." DeRosiers, supra at 949 F.2d 23.

To succeed, the party requesting court appointed counsel "must demonstrate that he was indigent and that exceptional circumstances were present such that a denial of counsel was likely to result in fundamental fairness impinging on his due process rights." See Childs v. Duckworth, 705 F.2d 915, 922 (7th

Cir. 1983). The Court, Hagopian, M.J., made no findings in this respect in his February 27 Order (Doc. 5).

(a) The Plaintiff Has Established Indigency

Here, unlike the situation in DeRosiers supra, the Plaintiff has been granted leave to proceed in forma pauperis (Doc. 4), and as evidenced by his Inmate Financial Statement is, in fact, indigent. In DeRosiers, the Plaintiff was repeatedly denied leave to proceed in forma pauperis and as the First Circuit Court of Appeals found: "...it seems probable that DeRosiers cannot vault even the first of these hurdles [indigency]. [w]hen a litigant asserts his indigency, he must carry the devoir of persuasion. [h]ere, DeRosiers twice applied for forma pauperis status, but the district court appears never to have found him eligible. [i]ndeed, the court ordered him to pay filing fees and the like, and he did so. [t]he Court also suggested that attorneys could be found to represent the appellant on a contingent fee basis. [w]ith the case in this posture, the district court's refusal to appoitn counsel cannot rewardingly be assigned as error." Id. at 949 F.2d 23 (citing Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F.2d 22, 23 (2d Cir. 1988) (per curiam)(§ 1915(d) only allows appointment of counsel where a litigant is indigent). Here the litigant is indigent, and he has not been able to contact any attorneys that work on a contingency fee basis, primarily due to the fact that the Plaintiff is incarcerated in North Carolina and counsel would need to be located in the State of Rhode Island.

Accordingly, the Plaintiff submits that he has established his indigency.

(b) Exceptional Circumstances

Next, to determine whether there are exceptional circumstances sufficient to warrant appointment of counsel, "a court must examine the total situation, focusing, inter alia, on the merits of the case, the complexity of the legal issues, and the litigants ability to represent himself." DeRosiers, supra 949 F.2d 24 (citing Cookish v. Cunningham, 787 F.2d 1, 2-3 (1st Cir. 1986)).

In the instant case, the Plaintiff identifies three incidents (Compl. ¶¶38-51, ¶¶52-81, and ¶¶82-113), as follows: (i) Donald W. Wyatt ("Wyatt") staff (operated by Defendant Cornell Companies), giving the Plaintiff another inmate's heart medication and causing the Plaintiff to experience a dangerous drop in blood pressure and subsequently to pass out and failing to secure adequate medical attention in response; (ii) the Plaintiff's ingestion of a metal object and Defendants' failure to treat his profuse bleeding; and (iii) the Plaintiff's suicide attempt, which left the Plaintiff with an 8.5" inch scar on his left forearm, and the Defendants' failure to provide adequate medical treatment, the least of which was stitches, and relocating the Plaintiff to a unit of Wyatt, which experienced daily sewage flooding, leading to an infection on the Plaintiff's arm. In connection with the third incident, the Complaint also alleges the Defendants responded with ethnic slurs when he requested medical attention (i.e., "you think this prison is bad...you ever see what happened in Midnight Express [a movie about a Turkish prison]...stop the [expletive] whinning" Compl. ¶99, p. 30).

1. Merit of Plaintiff's Claims

In terms of merit, the Plaintiff must establish deliberate indifference by the defendants. Estelle v. Gamble, 429 U.S. 97, 104-06 (1976). Specifically, a plaintiff must show:

(a) He had a serious medical need;

(b) Prison officials showed "deliberate indifference" to Plaintiff's serious medical need; and

(c) This deliberate indifference caused the Plaintiff's injury.

Id.

Moreover, the First Circuit has recognized that deliberate indifference to an inmate's serious mental health needs violates the eighth amendment. See Ferola v. Moran, 622 F.Supp. 814, 820 (D.C.R.I. 1985); see also Laaman v. Helgemoe, 437 F.Supp. 269, 313 (D.C.N.H. 1977)(there is "[n]o underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." (internal citations and quotation marks omitted)).

Here, the Plaintiff's injuries were serious enough that they left him with a permanent 8.5" inch scar on his left forearm because the Defendants never took him to a hospital so the Plaintiff may receive sutures, and the Plaintiff has sustained permanent internal damage (stomac). The Defendants' actions evidence that the medical attention received by him was "so clearly inadequate as to amount to a refusal to provide essential care." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985). Indeed, the Defendants' "Midnight Express" comments were not the type of medical care the Plaintiff needed at the time (Compl. ¶99, p.30). The Plaintiff is of Turkish origin and the Defendants' comments

were not the type of medical care the Plaintiff needed.

Also, with respect to the Plaintiff's housing conditions after his suicide attempt, as noted in the Complaint, he was subject to completely unsanitary conditions. ("...the Plaintiff informed...[Defendants]...of the very unsanitary conditions at C-Unit: wide sprad excrement-sewage- in the C-Unit dayroom (where everyone in the unit eats), as a result of plumbing problems in connection with construction at Wyatt. This would occur once a day, whenever anyone flushed in the Unit, and the sewage had built up, and would then flood the C-Unit dayroom, and routinely the cells, such as the Plaintiff's which was located on the bottom tier...[t]here was no disinfectant or other materials provided, and despite the Plaintiff having a large, open gash on his arm, he was forced to clean...sewage out of the dayroom and out of his own sell, so at the very least, he can eat. The daily flooding continued for 30 days...[b]etween November 11, 2006 and December 20, 2006, the Plaintiff remained in excruciating pain and developed an infection in his open gash." Compl. ¶¶97-98, pp. 29-30.)

Courts have generally held that subjecting a prisoner to such unsanitary conditions is, even for short periods of time, a violation of the Eighth Amendment. See Gaston v. Couglin, 249 F.3d 156, 166 (2d Cir. 2001)(noting "[w]e are unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end. [w]e conclude that the Eighth Amendment claims of...unsanitary conditions...should be reinstated" (reversing district court's ruling) Id at 166).

2. Complexity of the Legal Issues

The Plaintiff is not a trained lawyer, and all of the pleadings in this case have been written with the assistance of a legal aid project. However, because the project is located in North Carolina and the instant lawsuit is in Rhode Island, the Plaintiff has not been able to locate counsel admitted in the State of Rhode Island.

The legal issues in this case are not terribly complex for an attorney. The Plaintiff, however, is a 23 year old, who, as noted in his Motion to Appoint Counsel (Doc. 2), is an asylee in this country (he is a Turkish Kurd), who will be subject to deportation at the end of his prison sentence on September 24, 2008.[1] He was a senior year history major at the New York University at the time of his arrest.

Further, the Plaintiff is unsure, and will be in need of clarification of the following as the litigation progresses: are the Plaintiff's claims to be analyzed under the Eighth Amendment or under the Fifth or Fourteenth Amendment Due Process Clause or a combination thereof? See Ingraham v. Wright, 403 U.S. 651, 671 n.40 (1977). The Plaintiff commenced his incarceration at Wyatt on June 16, 2005. He pled guilty to his offense (wire fraud) on June 6, 2006, and presumably at that point was no longer a "pretrial detainee." And the three incidents outlined in the Complaint occurred on November 21, 2005, September 20, 2006, and October 29, 2006. The Plaintiff, however, was not sentenced until April 11, 2007.

FN1. The Plaintiff's offense of wire fraud qualifies as an aggravated felony pursuant to 8 U.S.C. §1103. However, because the Plaintiff may not be deported to Turkey because Turkey has refused to accept him, he may ultimately be released pursuant to 8 U.S.C. §1231. Regardless, the Plaintiff will be in custody for the forseeable future until that situation is resolved.

This is an issue that will need to be addressed. However, whether the Plaintiff's claims are analyzed in their totality under the Eighth Amendment, or the Due Process Clause of the Fifth or Fourteenth Amendment, it does not effect the merits of the Plaintiff's claims. This is because the "Supreme Court has noted that the Fourteenth Amendment rights of pretrial detainees are at least as great as the Eighth Amendment protections afforded to a convicted prisoner." See Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001)(internal citations omitted).

Accordingly, the Plaintiff's claims have merit, under either analysis, however, the legal issues in this case also involve eighteen (18) Defendants, and the discovery in this case, and the mere cost of serving each of the Defendants every time there is a response, opposition, or other pleading due is a huge and almost impossible burden on the Plaintiff. Indeed, the Plaintiff is in the process of trying to figure out how to make the eighteen (18) copies of the Complaint necessary (51 pages times 18 Defendants is 918 pages) so everyone can be served. The Plaintiff's place of incarceration neither provides the resources or the equipment to make such a large number of copies. Currently, the Plaintiff is trying to get the number of copies to serve all of the parties through the prisoner's project and not being able to serve the Complaint would "impinge" on the Plaintiff's due process rights. See Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir. 1983). The Magistrate Judge's decision did not provide any analysis of the foregoing.

3. Plaintiff's Ability to Represent Himself

As noted previously in Part II(B)(2)(b)(2) pp.8-9 supra, the Plaintiff has prepared all of the filings and pleadings in this action with the assistance of a prisoner's project, the law librarian at this facility, and other individuals.

To the extent, the Magistrate Judge's ruling was without prejudice, the Plaintiff would like the opportunity to file a renewed motion for appointment of counsel after he can ascertain whether he can, at the least, serve all of the parties to this action, and the litigation develops a little more. The Plaintiff is aware that while Pro Se litigants are not held to the same stringent standards as lawyers, that they are not allowed a free license to skirt the local rules of procedure or the Federal Rules of Civil Procedure, and is trying his best to comply with the said rules. In the instant case, the Plaintiff filed this objection because the Magistrate Judge's ruling was unclear, it did not provide any analysis of the situation of the Plaintiff, and also did not include any warning, or notice, that the Plaintiff must object within ten (10) days. The Plaintiff was advised of the notice by the law librarian here, and absent this advice would not have known that he must file this objection within ten days. In any case, since the Magistrate Judge's ruling was issued on March 20, 2008, and the Plaintiff's Objections are being filed (mailed) on March 24, 2008, they are timely, and in light of the factors presented by the Plaintiff herein, which differentiate this case from DeRosiers, and the erroneous conclusion by the Court, Hagopian, M.J., the Plaintiff's second Objection

should be sustained insofar as the Magistrate Judge's ruling was with prejudice to renewal at a later date.

## III. Conclusion

For the foregoing reasons, the Plaintiff respectfully requests that his Objections pursuant to Fed.R.Civ.P. 72(a) be sustained, and the Court, Smith, J., grant him such other and further relief as it deems just and proper.

Dated: March 24, 2008

Respectfully submitted,

[signature]

Hakan Yalincak Pro Se
Reg. No. 15662-014
RCI
P.O. Box 630
Winton, NC 27986
(252) 358-5200 Tel.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document was mailed this 24th day of March, 2008 via first-class mail, postage pre-paid by depositing a copy of the same in the RCI inmate legal mailbox, addressed as follows:

Richard Crane, Esq.
Cornell Companies, Inc.
1700 West Loop South,
Suite 1500
Houston, TX 77027

Warden Wayne T. Salisbury, Jr.
and all individual Defendants
950 High Street
Central Falls, RI 02863

Hakan Yalincak